UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
JESSICA LUMPKIN and JAYLINA LLOYD,                      :
                                                        :
                              Plaintiffs,               :    15 Civ. 839 (KPF)
                                                        :
                    v.                                  :    OPINION AND ORDER
                                                        :
DETECTIVE LAUREN BREHM, Shield                          :
No. 969, DETECTIVE SHKELZEN                             :
AHMETAJ, Shield No. 6476, DETECTIVE                     :
"JOHN DOE," and SERGEANT "RICHARD                       :
ROE,"                                                   :
                                                        :
                              Defendants.               :
                                                        :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 27, 2017

KATHERINE POLK FAILLA, District Judge:

      Plaintiffs Jessica Lumpkin and Jaylina Lloyd — mother and daughter, respectively — bring this action under 42 U.S.C. § 1983 against New York City Police Department ("NYPD") Detectives Lauren Brehm, Shkelzen Ahmetaj, and John Doe, and NYPD Sergeant Richard Roe (together, "Defendants"). Defendants have moved to dismiss Plaintiffs' Second Amended Complaint (the "SAC") under Federal Rule of Civil Procedure 12(b)(6). The brief supporting Defendants' motion relies heavily on documents the Court may not consider under Rule 12(b)(6). Moreover, it cites law that is inapposite to Plaintiffs' claims. Accordingly, and for the reasons set forth below, Defendants' motion to dismiss is denied.

## BACKGROUND[1]

### A. Factual Background

Around 6:00 a.m. on July 1, 2014, Detectives Ahmetaj and Doe arrived at Plaintiffs' shared apartment in Brooklyn, New York. (SAC ¶¶ 6-7, 15). Lumpkin was home; Lloyd was not. (*Id.* at ¶ 16). The detectives had an arrest warrant for a man who was not then in Plaintiff's apartment, but they informed Lumpkin that they were also looking for Lloyd. (*Id.* at ¶¶ 17-19). Ahmetaj and Doe then ordered Lumpkin to accompany them to the stationhouse of the NYPD's 13th Precinct in Manhattan. (*Id.* at ¶ 20). Ahmetaj and Doe drove Lumpkin to the stationhouse, but did not handcuff her. (*Id.* at ¶ 21).

At the stationhouse, Ahmetaj and Doe took Lumpkin's shoes and phone, but told her that she was not under arrest. (SAC ¶¶ 22, 24). This was false: Lumpkin *was* under arrest. (*Id.* at ¶¶ 22-23).[2] Brehm told Lumpkin as much, then handcuffed Lumpkin. (*Id.* at ¶ 25). And at around 1:00 p.m., Brehm ordered Lumpkin to call Lloyd in order to "get [Lloyd] to come to the stationhouse." (*Id.* at ¶ 26). Roe informed Lumpkin "that she would not be released from custody until she produced her daughter." (*Id.* at ¶ 28).

---

[1]   This Opinion draws on facts from Plaintiffs' SAC (Dkt. #18) and Exhibits ("SAC, Ex.") A (Dkt. #18-1), B (Dkt. #18-2), and C (Dkt. #18-3) attached to it. *See, e.g., Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). The parties have divergent views on whether the Court may look beyond the SAC and its Exhibits in resolving Defendants' motion to dismiss; the Court explores this issue *infra*. For ease of reference, the Court refers to Defendants' memorandum in support of their motion to dismiss as "Def. Br." (Dkt. #33), to Plaintiffs' opposition as "Pl. Opp." (Dkt. #35), and to Defendants' reply as "Def. Reply" (Dkt. #39).

[2]   Defendants concede that "Lumpkin was under arrest at the time Detective Ahmetaj arrived at her home." (Def. Br. 9 n.2).

Because Lloyd did not pick up her phone when Lumpkin called her, Lumpkin remained at the stationhouse, "illegally held hostage," for roughly nine hours. (SAC ¶¶ 27, 29, 30-31). Brehm released Lumpkin only after she promised to produce Lloyd at the stationhouse on some future date. (*Id.* at ¶ 31). In exchange, Brehm issued Lumpkin a desk appearance ticket that "falsely and maliciously accuse[d] [Lumpkin] of petit larceny" and ordered Lumpkin to appear before the Criminal Court of the City of New York on August 5, 2014. (*Id.* at ¶¶ 31-32, 39; *id.* at Ex. A). Brehm promised Lumpkin that she would void the desk appearance ticket once Lloyd came to the stationhouse, but never followed through. (*Id.* at ¶¶ 33, 38).

Lloyd went to the stationhouse at around 9:00 a.m. on July 17, 2014. (SAC ¶ 35). Around 12:30 a.m. on July 18, after "the New York County District Attorney" determined that "there was not probable cause for [Lloyd's] arrest," Lloyd was released. (*Id.* at ¶¶ 36-37).

Lumpkin appeared in Criminal Court on August 5, 2014. (SAC ¶ 39). But that same day, Lumpkin received from the District Attorney's Office a document indicating that it "was not ready to proceed with [her] prosecution." (*Id.* at ¶¶ 40-41; *id.* at Ex. B). And when Lumpkin's attorney called the District Attorney's Office on December 29, 2014, he learned "that the charge against [Lumpkin] had been dismissed and sealed." (*Id.* at ¶ 42; *id.* at Ex. C).

**B.   Procedural Background**

Plaintiffs filed their initial complaint on February 4, 2015. (Dkt. #1). After a conference with the Court on April 14, 2016 (*see* Dkt. #22), Plaintiffs

submitted an amended complaint (Dkt. #16).  And on April 21, 2016, Plaintiffs filed the SAC, the operative complaint in this case.  (Dkt. #18; *see* Dkt. #20).  Defendants moved to dismiss the SAC on August 8, 2016.  (Dkt. #32).  Plaintiffs responded on September 7, 2016 (Dkt. #35), and briefing concluded when Defendants submitted their reply on September 23, 2016 (Dkt. #39).

## DISCUSSION

### A. Applicable Law

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  A "plausible" claim is one "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  As relevant here, "[a] complaint based upon a violation of [§] 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law."  *Banks* v. *Cty. of Westchester*, 168 F. Supp. 3d 682, 696 (S.D.N.Y. 2016) (citation omitted).

### B. Analysis

The SAC raises two claims.  First, both Plaintiffs argue that they were arrested (Lumpkin on July 1, and Lloyd on July 17) without probable cause.  The SAC does not specify the Defendants against whom Plaintiffs bring their false-arrest claims.  (*See* SAC ¶¶ 43-44).  As far as the Court can tell, Lumpkin brings her false-arrest claim against all four Defendants, while Lloyd brings her false-arrest claim against Detective Ahmetaj alone.  Second, Lumpkin alleges

4

that Detective Brehm detained her for an unconstitutionally long period of time (nine hours) before releasing her on July 1.³

But the issue the parties contest most vigorously is prefatory: What documents may the Court consider in deciding this Opinion? Defendants argue that this is an open-and-shut identity-fraud case: Lloyd stole an out-of-state tourist's debit-card number, which Plaintiffs then used to pay for laundry services. (Def. Br. 2-3). And Defendants substantiate that narrative with six exhibits attached to the Declaration of Joshua Friedman ("Friedman Declaration" (Dkt. #34)). The exhibits include an affidavit from Plaintiffs' victim (Friedman Decl., Ex. A);⁴ emails between Detective Brehm and the laundry service Plaintiffs patronized (*id.* at Ex. B); and a document which allegedly shows that Lumpkin spent just six hours at the 13th Precinct's stationhouse on July 1 (*id.* at Ex. F; *see* Def. Br. 3).

Defendants insist that the Friedman Declaration's six exhibits establish that Plaintiffs' suit lacks merit. Maybe so. But the Court cannot consider any of these exhibits at this stage. "[A] court adjudicating ... a [Rule 12(b)(6)]

---

3   Or so the parties seem to think. It is not clear from the face of the SAC that Lumpkin is raising an excessive-detention claim. The parties, however, have briefed this issue. (*See* Def. Br. 16; Pl. Opp. 14; Def. Reply 7). For this reason, the Court will proceed on the assumption that Lumpkin brings a claim for excessive detention.

4   In this affidavit, Plaintiffs' alleged victim avers that her "debit card information" was compromised. (Friedman Decl., Ex. A, ¶ 7; *see id.* at ¶¶ 3, 4, 8 (referring to card as one issued by a bank)). Defendants, however, argue that Plaintiffs stole this tourist's *credit* card information. (Def. Br. 2-3). The Court assumes that this is an oversight on Defendants' part, and that their intention was to argue that Plaintiffs fraudulently used a debit or bank card. (*But see* Friedman Decl., Ex. A, ¶ 10 ("I corresponded with Detective Lauren Brehm and informed her that someone stole my credit card information[.]")). To be clear, apart from resolving this minor and non-dispositive factual discrepancy, the Court does not rely on the Friedman Declaration nor on any of its exhibits.

motion may review only a narrow universe of materials … [including] facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks and citation omitted). That universe may also encompass documents "'integral' to the complaint"; "[a] document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Id.* (internal quotation marks and citation omitted).

Defendants argue that the Friedman Declaration's six exhibits are either integral to the SAC or subject to judicial notice. Defendants are mistaken. None of these exhibits is mentioned in, let alone "integral" to, the SAC. And even if the Court could take notice of these exhibits — a proposition the Court doubts seriously — it could not glean from them the facts Defendants adduce in their brief. *See Bloomingburg Jewish Educ. Ctr.* v. *Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 477 (S.D.N.Y. 2015) ("When [a] Court takes judicial notice of a document, it takes notice of the document's existence, not the truth of the statements asserted in the document."). Consequently, the Court will not consider the Friedman Declaration nor any of its exhibits. It will instead review the SAC, the three exhibits attached thereto, and nothing more.[5]

---

5    Defendants' misapprehension of the relevant law in this regard is particularly perplexing, inasmuch as the topic of what documents could properly be considered in a motion to dismiss was clearly discussed during the premotion conference held on April 14, 2016. (*See* Transcript of Proceedings of April 14, 2016 at 3 (Dkt. #22)).

Because Defendants rely heavily on the Friedman Declaration's exhibits in their brief, that conclusion streamlines this Opinion's analysis. Both Plaintiffs have stated a claim for false arrest. And Lumpkin has stated a claim for excessive detention. The Court considers each claim in turn.

### 1. Both Plaintiffs Have Alleged a Plausible False-Arrest Claim

"Under New York law," which governs Plaintiffs' false-arrest claims, "an action for false arrest requires that the plaintiff show that [i] the defendant intended to confine him, [ii] the plaintiff was conscious of the confinement, [iii] the plaintiff did not consent to the confinement[,] and [iv] the confinement was not otherwise privileged." *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19 (2d Cir.) (internal quotation marks and citation omitted), *as amended* (Dec. 4, 2012); *Sforza* v. *City of N.Y.*, No. 07 Civ. 6122 (DLC), 2009 WL 857496, at *13 (S.D.N.Y. Mar. 31, 2009) (citation omitted). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either [i] he had probable cause for the arrest, or [ii] he is protected from liability because he has qualified immunity." *Simpson* v. *City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). And "[a]n officer is entitled to qualified immunity … if he can establish that he had 'arguable probable cause' to arrest the plaintiff," which requires the officer to demonstrate "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia* v. *Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation mark and citations omitted).

Defendants appear to argue that Detectives Brehm and Ahmetaj had probable cause to arrest Lumpkin and Lloyd or, at minimum, arguable probable cause sufficient to warrant qualified immunity.  (Def. Br. 5-10).  They do not address Detective Doe or Sergeant Roe.  For the sake of completeness, the Court will.

Because "an officer who cannot establish *arguable* probable cause necessarily cannot establish probable cause," *Tompkins* v. *City of N.Y.*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014), the Court proceeds directly to consider whether the officers who arrested Lumpkin and Lloyd enjoy qualified immunity.  And because Defendants have raised qualified immunity in a Rule 12(b)(6) motion, they must demonstrate that facts establishing arguable probable cause are "clear from the face of the [SAC]."  *Rahman* v. *Schriro*, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014).  That is "a formidable hurdle."  *McKenna* v. *Wright*, 386 F.3d 432, 434 (2d Cir. 2004).

Defendants have not overcome that hurdle.  To start, nothing in the SAC establishes that Defendants had arguable probable cause to arrest Lumpkin.  Ahmetaj and Doe arrived at Plaintiffs' apartment with an arrest warrant.  It wasn't for Lumpkin.  Nonetheless, and for no apparent reason, they ordered Lumpkin to come with them to the 13th Precinct's stationhouse.  Brehm handcuffed Lumpkin and ordered her to call Lloyd.  And Roe told Lumpkin that she could not leave the stationhouse until she convinced Lloyd to come there as well.  All four Defendants confined Lumpkin against her will and without

8

arguable probable cause. Lumpkin has thus alleged plausibly that Defendants falsely arrested her.

Lloyd has also plausibly alleged that Ahmetaj effected a false arrest. Ahmetaj arrested Lloyd when she arrived at the 13th Precinct on the morning of July 17, 2014. Some fifteen-and-a-half hours later, Lloyd was released after the District Attorney's Office determined it lacked probable cause to prosecute her. Nothing in the SAC suggests that Ahmetaj had arguable probable cause to confine Lloyd for that period. Lloyd, like Lumpkin, has thus stated a claim for false arrest.

### 2. Lumpkin Has Alleged a Plausible Excessive-Detention Claim

Lumpkin alleges that Brehm detained her for an unconstitutionally excessive time — nine hours — on July 1. Defendants, relying on an exhibit to the Friedman Declaration, retort that Lumpkin spent only six hours at the stationhouse that day. But the crux of their argument is that Lumpkin's excessive-detention claims fails as a matter of law under *City of Riverside* v. *McLaughlin*, 500 U.S. 44 (1991), because Lumpkin was detained for fewer than 48 hours.

These arguments miss their mark. On the facts, the Court must accept Lumpkin's allegation that she spent nine hours at the stationhouse on July 1. And on the law, the Court rejects the talismanic significance Defendants attach to *McLaughlin*. *McLaughlin*'s rule is that an individual arrested without a warrant must receive a "judicial determination[] of probable cause within 48 hours of [his] arrest." *McLaughlin*, 500 U.S. at 56. That holding does not

9

speak to Lumpkin's excessive-detention claim, which Lumpkin predicates on her allegation that Brehm "held [her] hostage" until Lumpkin promised to produce Lloyd. (Pl. Opp. 14).

A more apt precedent is *Russo* v. *City of Bridgeport*, where the Second Circuit read *Baker* v. *McCollan*, 443 U.S. 137 (1979), to establish an individual's right to be free "from a sustained detention stemming directly from … law enforcement officials' refusal to investigate available exculpatory evidence." 479 F.3d 196, 208 (2d Cir. 2007). *Russo* "permits recovery for excessive pre-trial detention where a [p]laintiff can show [i] that [she] has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, [ii] that the actions of the officers violated that right, and [iii] that the officers' conduct 'shocks the conscience.'" *Gonzalez* v. *N.Y. City*, No. 16 Civ. 254 (CM), 2016 WL 7188147, at *4 (S.D.N.Y. Dec. 2, 2016) (internal quotation marks omitted) (quoting *Russo*, 479 F.3d at 205).

*Russo*'s eponymous plaintiff spent 217 days in custody, far longer than Lumpkin was "held hostage." *Russo*, 479 F.3d at 208. But *Russo* "set no bright-line rule" for determining the amount of time after which a pretrial detainee's confinement violates the Constitution. *Gonzalez*, 2016 WL 7188147, at *4; *cf. Baker*, 443 U.S. at 145 ("[A] detention of three days over a New Year's weekend does not and could not amount to [a constitutional] deprivation."). Rather, *Russo*'s "touchstone is whether the defendants' actions were objectively

reasonable under the circumstances." *Gallimore* v. *Feliciano*, No. 14 Civ. 1519 (NSR), 2015 WL 3856694, at *8 (S.D.N.Y. June 19, 2015).

Based on the facts alleged in the SAC, coupled with Defendants' failure to address squarely this issue, Lumpkin has stated a claim for excessive detention. Lumpkin alleges that Brehm, without probable cause, arrested and detained Lumpkin in order to force her to bring Lloyd to the stationhouse. By Lumpkin's account, Brehm overlooked the lack of evidence inculpating Lumpkin for any crime, but calculatedly detained Lumpkin to reach her daughter. Without a relevant counterargument from Defendants, the Court is constrained to conclude that Lumpkin plausibly states a claim under *Russo*.

## CONCLUSION

As is clear from the preceding, the Court's resolution of this motion was largely foreordained by the particular subdivision of Rule 12 selected by Defendants; Plaintiffs should not assume that a similar result would obtain had the motion been brought under Rule 56. For the reasons set forth above, Defendants' motion to dismiss is DENIED. Defendants are ORDERED to file their answer on or before February 17, 2017. The parties are further ORDERED to meet and confer in order to submit a case management plan to the Court on or before February 28, 2017.

SO ORDERED.

Dated:   January 27, 2017
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge