UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                   :

JESSICA LUMPKIN and JAYLINA LLOYD,  :
                                   :

                   Plaintiffs,   :

                                   :

              v.                :      15 Civ. 839 (KPF)
                                   :

DETECTIVE LAUREN BREHM, Shield    :     OPINION AND ORDER
No. 969, DETECTIVE SHKELZEN      :
AHMETAJ, Shield No. 6476, DETECTIVE :
"JOHN DOE," and SERGEANT "RICHARD :
ROE,"                           :

                                   :

                 Defendants. :
                                   :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 8, 2018

KATHERINE POLK FAILLA, District Judge:

In July 2014, Plaintiffs Jessica Lumpkin and her daughter, Jaylina

Lloyd, were arrested for fraudulent credit card use and charged with petit

larceny and grand larceny, respectively. The District Attorney subsequently

declined to prosecute them. In this resulting litigation, Plaintiffs claim that

Defendants lacked probable cause to arrest Plaintiffs, and that Lumpkin was

"held hostage" at the police station for up to ten-and-a-half hours. Plaintiffs

claim deprivations of their civil rights under 42 U.S.C. § 1983 in the form of

false arrest as to both Lloyd and Lumpkin, and excessive detention as to

Lumpkin alone. Defendants, for their part, argue that Plaintiffs' arrests were

supported by probable cause; Lumpkin's detention was not excessive; and, at

the very least, Defendants are entitled to qualified immunity.

Pending before the Court is Defendants' motion for summary judgment. For the reasons discussed below, the Court grants Defendants' motion in full.

## BACKGROUND[1]

### A.    Factual Background

In October 2013, Gett Taxi — an on-demand transportation company — reported fraudulent credit card activity to the New York City Police Department (the "NYPD"). (Def. 56.1 ¶ 1). On January 9, 2014, the company provided the NYPD with two phone numbers (the "Phone Numbers") for the accounts linked to the fraudulent charges. (*Id.* at ¶¶ 3-4).[2] The company also provided the NYPD with a mailing address (131 Moore Street, Brooklyn, New York 11206) and an email address (the "Email Address") linked to the accounts. (*Id.* at ¶¶ 7, 9). As the NYPD later discovered, the Phone Numbers belonged to Plaintiffs

---

[1]    For ease of reference, the Court refers to the Second Amended Complaint as the "SAC" (Dkt. #18); Defendants' memorandum of law in support of their motion for summary judgment as "Def. Br." (Dkt. #55); Defendants' Local Civil Rule 56.1 Statement of Material Undisputed Facts as "Def. 56.1" (Dkt. #56); Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #60); Plaintiffs' Local Civil Rule 56.1 Statement of Material Undisputed Facts as "Pl. 56.1 Opp." (Dkt. #59); Defendants' reply brief as "Def. Reply" (Dkt. # 62); and Defendants' Counterstatement to Plaintiffs' Rule 56.1 Statement as "Def. 56.1 Reply" (Dkt. #61).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent ... controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). Enforcement of the Court's Local Rule is particularly salient here, inasmuch as Plaintiffs proffer only conclusory denials for the few of Defendants' factual assertions that they contest.

[2]    For privacy reasons, the Court refrains from detailing certain identifying information in this Opinion.

and the Email Address belonged to Plaintiff Lloyd. (*Id.* at ¶¶ 5, 6, 8). The investigation also revealed that, at the time of the fraudulent purchases, Plaintiffs resided at an apartment (the "Apartment") at 130 Moore Street, Brooklyn, New York. (*Id.* at ¶ 10).

On May 24, 2014, another company, Fly Cleaners, contacted the NYPD to report fraudulent credit card activity. (Def. 56.1 ¶ 11). Just as Gett Taxi had done, Fly Cleaners provided the NYPD with an address linked to the suspect account, which turned out to be the Apartment. (*Id.* at ¶ 12). It provided the NYPD with the same two Phone Numbers. (*Id.*). It also provided the NYPD with the name and contact information for the rightful owner of the credit card. (*Id.* at ¶ 15). The card's owner — the victim of the credit card fraud — subsequently corresponded with Detective Lauren Brehm, one of the named Defendants in this action. (*Id.* at ¶ 17).

The victim informed Detective Brehm that on May 22, 2014, her credit card information had been used to make an unauthorized purchase in the amount of $26.75 at Fly Cleaners. (Def. 56.1 ¶¶ 17, 20). Fly Cleaners' records, which the company provided to the NYPD, confirmed that on May 22, 2014, the victim's credit card had been used to purchase $26.75 in dry cleaning services for one or more individuals residing at the Apartment. (*Id.* at ¶ 20).

The victim also told the NYPD that she had only used the credit card once while visiting New York City, during a trip to the Statue of Liberty gift shop on May 18, 2014. (Def. 56.1 ¶ 18). Detective Brehm thereafter contacted the manager of the Statue of Liberty gift shop, who informed her that Plaintiff

Lloyd was working at the gift shop on May 18, 2014, and was the cashier who rang up the victim's purchases. (*Id.* at ¶¶ 21-22).

On June 30, 2014, Detective Brehm asked Detective Shekelzen Ahmetaj to apprehend Plaintiffs Lloyd and Lumpkin. (Def. 56.1 ¶ 29). Detective Brehm told Detective Ahmetaj that there was probable cause to arrest Lloyd and Lumpkin. (*Id.* at ¶ 30). On July 1, 2014, at approximately 7:00 a.m., Detective Ahmetaj arrived at the Apartment. (*Id.* at ¶ 32). Lumpkin was home; Lloyd was not. (*Id.* at ¶ 33). Detective Ahmetaj informed Lumpkin that there was a criminal complaint against her and that she had to accompany him to the police station. (*Id.* at ¶ 34). Upon arrival at the precinct, Lumpkin was placed in a cell. (*Id.* at ¶ 35).

At approximately 10:30 a.m., Detective Brehm arrived at the station to interview Lumpkin. (Def. 56.1 ¶ 36). Detective Brehm issued a *Miranda* warning, after which Lumpkin executed a written statement indicating that she had "paid a guy to wash [her] clothes. He sent someone to get the clothes. I did not [k]no[w] it was fake." (*Id.* at ¶¶ 38-39). At Detective Brehm's request, Lumpkin called her daughter Lloyd, but was unable to reach her. (*Id.* at ¶¶ 40-41). Plaintiffs claim that Lumpkin was told that she could not leave the precinct until she persuaded Lloyd to appear. (Pl. 56.1 Opp. ¶ 42; SAC ¶ 28). Defendants assert, by contrast, that "Detective Brehm never stated that [P]laintiff Lumpkin could not leave the precinct until arrangements were made to bring ... Lloyd to the precinct." (Def. 56.1 ¶ 42). Lumpkin herself stated in her deposition that an officer said, "call your daughter, and we'll let you go,"

and "if you get her here we [will] let you leave faster." (Dkt. #57-6 at 11:12-13, 80:10-11).

Ultimately, the NYPD charged Lumpkin with petit larceny and released her with a desk appearance ticket, which Lumpkin signed at 3:45 p.m. on July 1, 2014. (Def. 56.1 ¶¶ 43-44). Defendants assert that Lumpkin's detention lasted six-and-a-half hours. (*Id.* at ¶ 45). To support that claim, Defendants cite the Online Prisoner Arraignment form, which states that Lumpkin was arrested at 11:00 a.m. and released at 5:30 p.m. (*Id.*; Dkt. #57-15). Plaintiffs reject that claim, alleging instead that Lumpkin was arrested at approximately 7:00 a.m., when Detective Ahmetaj instructed her to go to the precinct, and released at 5:30 p.m., such that she was detained for ten-and-a-half hours. (Pl. 56.1 Opp. ¶¶ 45, 49).

Soon after Lumpkin's release, Lloyd's attorney contacted Detective Brehm to schedule Lloyd's surrender date. (Def. 56.1 ¶ 46). On July 17, 2014, Lloyd went to the police station, where she was charged with grand larceny and arrested by Detective Ahmetaj. (Def. 56.1 ¶¶ 47-48; Def. 56.1 Reply ¶ 55). The District Attorney ultimately declined to prosecute Lumpkin or Lloyd. (Def. 56.1 Reply ¶¶ 54, 56).

## B. Procedural Background

Plaintiffs filed their initial complaint on February 4, 2015, claiming that Defendants lacked probable cause to arrest Lloyd or Lumpkin, and that Lumpkin had been "held hostage" for "approximately nine hours[.]" (Dkt. #1 at ¶¶ 28, 39, 40). For the remainder of the year, the litigants participated in

discovery and mediation proceedings pursuant to the plan outlined in Local

Rule 83.10; the matter was not resolved during that period.  Following a pre-

motion conference on April 14, 2016 (*see* Dkt. #22), Plaintiffs submitted an

amended complaint (Dkt. #16).  And on April 21, 2016, Plaintiffs filed the

Second Amended Complaint ("SAC"), the operative complaint in this case.

(Dkt. #18; *see* Dkt. #20).  Defendants moved to dismiss the SAC on August 8,

2016.  (Dkt. #32).  The Court denied Defendants' motion on January 27, 2017.

(Dkt. #40).

On July 10, 2017, the Court held a post-discovery conference during

which Defendants confirmed their intent to file a Rule 56 motion for summary

judgment.  (*See* Dkt. #52).  At the conclusion of the conference, the Court

issued a briefing schedule, which was subsequently revised at Defendants'

request.  (Dkt. #51).  On October 11, 2017, Defendants filed their opening brief

and supporting papers.  (Dkt. #55-57).  Plaintiffs filed their opposition papers

on November 13, 2017.  (Dkt. #58-60).  Defendants filed their reply brief on

November 27, 2017.  (Dkt. #62).

## DISCUSSION

### A.    Applicable Law

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986);

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine

dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

The moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Instead, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). It must not, however, accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d

Cir. 1990)).  And "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,* 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

**B.    Analysis**

Plaintiffs advance two claims under 42 U.S.C § 1983.  *First,* they allege that they were arrested without probable cause.  As the Court noted when it denied Defendants' motion to dismiss, "[t]he SAC does not specify the Defendants against whom Plaintiffs bring their false-arrest claims ....  As far as the Court can tell, Lumpkin brings her false-arrest claim against all four Defendants, while Lloyd brings her false-arrest claim against Detective Ahmetaj alone." *Lumpkin* v. *Brehm* ("*Lumpkin I*"), 230 F. Supp. 3d 178, 182 (S.D.N.Y. 2017).  *Second*, Lumpkin alone raises a claim for excessive detention.[3] Defendants argue that there are no disputes of material fact as to either claim, and that the Court should grant summary judgment.[4]  The Court agrees.

### 1.    Plaintiffs' False-Arrest Claim Fails

"Under New York law," which governs Plaintiffs' claims, "an action for false arrest requires that the plaintiff show that [i] the defendant intended to

---

[3]    The adequacy of Lumpkin's pleading is addressed *infra*.

[4]    Defendants do not address the claims against Sergeant Richard Roe or Detective John Doe.  Nor have Plaintiffs discussed their claims as to those Defendants.  Despite a

confine him, [ii] the plaintiff was conscious of the confinement, [iii] the plaintiff did not consent to the confinement[,] and [iv] the confinement was not otherwise privileged." *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal quotation marks and citation omitted). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either [i] he had probable cause for the arrest, or [ii] he is protected from liability because he has qualified immunity." *Simpson* v. *City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). "An officer is entitled to qualified immunity … if he can establish that he had arguable probable cause to arrest the plaintiff," which requires the officer to demonstrate that "[i] it was objectively reasonable for the officer to believe that probable cause existed, or [ii] officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia* v. *Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation marks and citations omitted).

---

lengthy discovery period in this matter, Plaintiffs have not discovered the identities of Sergeant Richard Roe and Detective John Doe. Courts in this Circuit have held that "[w]here a plaintiff 'has had ample time to identify' a John Doe defendant but gives 'no indication that he has made any effort to discover the [defendant's] name, … the plaintiff 'simply cannot continue to maintain a suit against' the John Doe defendant." *Coward* v. *Town and Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quoting *Kearse* v. *Lincoln Hosp.*, No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009)); *see also Keesh* v. *Artuz*, No. 97 Civ. 8417 (AKH), 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) ("Even after discovery, plaintiff has failed to identify the 'John Doe' and 'Jane Doe' defendants. Accordingly, the complaint against them must be dismissed." (citing *Valentin* v. *Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997))).

The Court will not separately address the claims as to Sergeant Richard Roe or Detective John Doe, particularly where Plaintiffs themselves omit mention of either defendant in any of their opposition papers. It is the Court's present intention to dismiss the action as to these unidentified defendants. On the chance that identifying information was learned by Plaintiffs during the pendency of this motion, the Court will direct Plaintiffs to show cause in writing — within 14 days of the issuance of this Opinion — why the matter should not be dismissed as to Defendants Roe and Doe.

Defendants argue, in the first instance, that Detectives Brehm and Ahmetaj are entitled to qualified immunity. Detective Ahmetaj, they claim, had no involvement in the investigation into Lloyd or Lumpkin, and reasonably relied upon Detective Brehm's probable cause determination. (Def. Br. 5-6). Detective Brehm, they assert, is entitled to qualified immunity because there was, at a minimum, arguable probable cause to arrest Lumpkin and Lloyd. (*Id.* at 10-12). Defendants further assert, as a second argument in favor of summary judgment, that Plaintiffs' arrests were privileged because they were supported by probable cause. (*Id.* at 6-10).

Because "an officer who cannot establish *arguable* probable cause necessarily cannot establish probable cause," *Tompkins* v. *City of N.Y.*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014), the Court proceeds directly to consider whether Brehm's and Ahmetaj's actions were supported by arguable probable cause and, as such, protected by qualified immunity.

### a. Detective Brehm Is Entitled to Qualified Immunity

Qualified immunity protects government actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). It "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009). The Second Circuit has explained that,

"[u]nder federal law, a police officer is entitled to qualified immunity where '[i] his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or [ii] it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.'" *Jenkins* v. *City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Cerrone* v. *Brown*, 246 F.3d 194, 199 (2d Cir. 2001)); *see generally White* v. *Pauly*, — U.S. —, 137 S. Ct. 548, 551 (2017); *Ganek* v. *Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017).

"The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Jenkins,* 478 F.3d at 87. Under the "arguable" probable cause standard, an officer would not be immunized if "officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause[.]" *Id.* Probable cause, in turn, exists where "the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Amore* v. *Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (quoting *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964)) (brackets in original). "In deciding whether an officer's conduct was 'objectively reasonable' for purposes of qualified immunity, we look to the information possessed by the officer at the time of the arrest, but

'we do not consider the subjective intent, motives, or beliefs' of the officer." *Id.* (quoting *Conn. ex rel. Blumenthal* v. *Crotty*, 346 F.3d 84, 106 (2d Cir. 2003)).

The issue here is whether a reasonable officer could agree that the information that Detective Brehm possessed at the time of Lumpkin's and Lloyd's arrests sufficed to establish arguable probable cause. *See Jenkins*, 478 F.3d at 87. It did, and in fact it sufficed to establish probable cause. To review, at the time of the arrests, Detective Brehm knew that: (i) Gett Taxi and Fly Cleaners had both reported fraudulent credit card activity to the NYPD; (ii) the reported activity was linked to individuals residing at 130 or 131 Moore Street in Brooklyn, who used the Phone Numbers and the Email Address; (iii) the victim that Fly Cleaners identified had used her credit card just once in New York City, at the Statue of Liberty gift shop; (iv) Lloyd worked at the gift shop and was the cashier who rang up the victim's purchases; and (v) the Apartment, the Phone Numbers, *and* the Email Address linked to the fraudulent credit card use belonged to Lloyd and/or Lumpkin.

There was no reason for law enforcement to doubt the veracity of the victim's version of events, or those of the businesses that reported fraudulent credit card activity. Nor was there any reason to doubt the employer's statement that Lloyd was the cashier who handled the victim's purchases at the Statue of Liberty gift shop. That information, which was objectively credible, led Detective Brehm inexorably to two individuals: Lumpkin and Lloyd.

12

The information easily supports a finding of arguable probable cause —
and, indeed, probable cause — as to Lumpkin.  Under New York law, a person
is guilty of petit larceny "when he steals property," including "personal
property ... or any ... thing of value[.]"  N.Y. Penal Law §§ 155.25, 155.00(1).
For statutory purposes, "[a] person 'steals property' and commits 'larceny'
when, with intent to deprive another of property or to appropriate the same to
himself or to a third person, he wrongfully takes, obtains or withholds such
property from an owner thereof[.]"  *Id.* § 155.05(1).  Appropriation of property
includes "exercis[ing] control over [the property] ... under such circumstances
as to acquire the major portion of its economic value or benefit[.]"  *Id.*
§ 155.05(4).  Using a stolen credit card constitutes an appropriation of
property.  *See In re Reinaldo O.*, 673 N.Y.S.2d 417, 418 (1st Dep't 1998); *People*
v. *Barden*, 983 N.Y.S.2d 534, 546 (1st Dep't 2014), *rev'd on other grounds*, 27
N.Y.3d 550 (2016).  Here, the fact that both Fly Cleaners and Gett Taxi
provided police with personal information belonging to Lumpkin — her phone
number and address — that they connected to fraudulent activity was
sufficient to provide Detective Brehm with arguable probable cause to arrest
Lumpkin.

The information similarly supports Lloyd's arrest for grand larceny in the
fourth degree, which includes theft of property consisting of a credit card or
debit card.  N.Y. Penal Law § 155.30(4).  If anything, the evidence as to Lloyd is
even stronger than that as to Lumpkin:  Not only did one of the phone numbers
and the address used to purchase services from Gett Taxi and Fly Cleaners

13

belong to Lloyd, so too did the email address that was linked to the suspect Gett Taxi account. And the manager of the Statue of Liberty gift shop — where the victim identified by Fly Cleaners had used her credit card — confirmed that Lloyd worked at the gift shop and rang up the victim's purchases. The evidence implicating Lloyd was thus overwhelming. *See, e.g.*, *United States* v. *Bowen*, 689 F. Supp. 2d 675, 679-80 (S.D.N.Y. 2010); *United States* v. *$29,880.00 U.S. Currency*, No. 91 Civ. 3786 (LJF), 1992 WL 30937, at *3 (S.D.N.Y. Feb. 10, 1992).

This Court addressed an analogous fact pattern in *Morocho* v. *New York City*, No. 13 Civ. 4585 (KPF), 2015 WL 4619517 (S.D.N.Y. July 31, 2015). In *Morocho*, a woman complained to the NYPD that she had left her purse on a subway train, and that someone was using her credit cards to make unauthorized purchases. *Id.* at *1. During their investigation, NYPD officers learned that one of the credit cards had been used to purchase Metrocards. *Id.* The NYPD modified the turnstiles at a subway station in Manhattan where an offending Metrocard had been used, so that the turnstiles would alert the NYPD if the card were used again. *Id.* Shortly thereafter, one of the turnstiles triggered the alert. *Id.* The police arrested plaintiff and charged him with possession of stolen property. *Id.* Under those circumstances, this Court found that the officers had probable cause to arrest plaintiff because "it was reasonable for the officers to conclude that the user of the card was either the woman who had made the unauthorized purchase of the Metrocard, a

confederate of hers, or someone with whom she had engaged in an unauthorized transfer of the Metrocard." *Id.* at *5.

Here, too, it was reasonable for Detective Brehm to conclude that Lumpkin and Lloyd had either made the unauthorized purchases themselves or were confederates of whomever had done so. After all, police officers "are entitled to rely on the victims' allegations that a crime has been committed." *Martinez* v. *Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). And courts have found probable cause when an investigation identifies property in a person's possession that was purchased with funds stolen from another person. *See People* v. *Bethune*, 678 N.Y.S.2d 418, 419 (4th Dep't 1998) (burglary victim identified property in defendant's possession as property owned by victim); *Diop* v. *City of N.Y.*, 50 F. Supp. 3d 411, 424 (S.D.N.Y. 2014) (finding probable cause to prosecute plaintiff in § 1983 action where victim identified purse recovered from plaintiff's car as stolen). Because the services purchased from Gett Taxi and Fly Cleaners were unmistakably linked to Lloyd and Lumpkin, Detective Brehm had arguable probable cause, and probable cause, to arrest them.

Plaintiffs advance two principal arguments in opposition. *First*, they assert that, because Lumpkin denied knowledge that the credit card was "fake," the officers lacked probable cause to arrest her. In discussing Lumpkin's written statement, Plaintiffs argue: "Not only can such a statement not reasonably be construed as any kind of confession of culpability, but it actually contains a specific denial of intent to commit any kind of fraud or larceny." (Pl. Opp. 7). Plaintiffs misconstrue the probable cause inquiry that a

police officer must pursue prior to effectuating an arrest. As the Second Circuit has explained: "[An] officer [i]s not required to make a full investigation into plaintiff's state of mind prior to taking action." *Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Indeed, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate any theoretically plausible claim of innocence before making an arrest." *Id.* (citing *Baker* v. *McCollan*, 443 U.S. 137, 145-46 (1979)). Here, there was strong evidence against Lumpkin and Lloyd. The fact that Lumpkin wrote a statement denying intent to commit larceny does not alter the qualified immunity and probable cause analyses.

*Second*, Plaintiffs assert that the District Attorney's request for additional information, followed by the ultimate decision not to prosecute Lloyd and Lumpkin, evidences a lack of probable cause. (Pl. Opp. 9). Plaintiffs claim that Defendants' failure to provide the additional information requested by the District Attorney "vitiates [t]he[i]r argument that there was probable cause, or even arguable probable cause, to arrest either [P]laintiff." (*Id.*).

Plaintiffs are wrong. That a prosecutor ultimately declines to prosecute does not suggest that police officers lacked probable cause. As a sister court in this Circuit recently noted, "a prosecutor's determination not to file an indictment ... does not eliminate probable cause. The existence of probable cause turns on whether there is sufficient evidence that a crime has been committed; the likelihood of proving guilt beyond a reasonable doubt is not relevant." *Rao* v. *City of N.Y.*, No. 14 Civ. 7422 (RRM) (LB), 2018 WL 1582289,

at *5 (E.D.N.Y. Mar. 29, 2018). Put differently, "[t]he validity of an arrest does not depend on a finding of innocence or any other disposition." *Quinn* v. *City of N.Y.*, No. 99 Civ. 7068 (JBW), 2003 WL 1090205, at *4 (E.D.N.Y. Mar. 12, 2003). Particularly in this case, where the evidence connecting Plaintiffs to the fraudulent credit card activity was so compelling, the Court cannot find that the decision not to prosecute somehow proves that police officers lacked arguable probable cause for the arrests.

In sum, Lloyd's and Lumpkin's arrests were supported, at a minimum, by arguable probable cause. Detective Brehm is therefore entitled to qualified immunity.

### b. Detective Ahmetaj Was Entitled to Rely Upon Detective Brehm's Probable Cause Determination

Detective Ahmetaj is similarly entitled to qualified immunity. Though Detective Ahmetaj was the arresting officer, he was not involved in the probable cause determination. Instead, he relied on Detective Brehm's determination that probable cause supported Plaintiffs' arrests. Detective Ahmetaj was entitled to rely on that determination. "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." *Loria* v. *Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002); *accord United States* v. *Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible" even where the arresting officer "lacks the specific information to form the basis for probable cause or reasonable suspicion" if "sufficient information to

justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.").

Nothing in the record suggests that Detective Ahmetaj had reason to question Detective Brehm's probable cause determination. There was no exculpatory evidence to which Detective Ahmetaj might have been privy before Plaintiffs' arrests. On the contrary, all existing evidence linked Lloyd and Lumpkin to the fraudulent purchases. It was therefore reasonable for Detective Ahmetaj to have followed Detective Brehm's instructions. Accordingly, Detective Ahmetaj is entitled to qualified immunity. *See Anthony* v. *City of N.Y.*, 339 F.3d 129, 138 (2d Cir. 2003) (noting that "[p]lausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists" (internal quotation marks and citation omitted)); *Bleiwas* v. *City of N.Y.*, No. 15 Civ. 10046 (ER), 2017 WL 3524679, at *4 (S.D.N.Y. Aug. 15, 2017) (finding that arresting officers were entitled to qualified immunity where they relied on a search warrant and their sergeant's instructions); *Spears* v. *City of N.Y.*, No. 10 Civ. 3461 (JG), 2012 WL 4793541, at *7 (E.D.N.Y. Oct. 9, 2012) (finding that officers who detained plaintiff at hospital were entitled to rely on the probable cause determinations of their fellow officers, who had personally observed plaintiff possess and ingest cocaine, despite some medical tests suggesting that plaintiff did not have contraband in his system).

### 2.    Lumpkin's Excessive-Detention Claim Fails

The Court next addresses Lumpkin's excessive-detention claim.  It begins with two antecedent issues, one legal and one factual.  Defendants, picking up on the Court's cue, argue first that Lumpkin did not adequately plead, and thus cannot now pursue, a claim for excessive detention.  (Def. Br. 13 (citing *Lumpkin I,* 230 F. Supp. 3d at 182 n.3 ("It is not clear from the face of the SAC that Lumpkin is raising an excessive-detention claim.")).  Lumpkin maintains that she did allege such a claim, and both sides address in detail the merits of that claim.  (Def. Br. 13-19; Pl. Opp. 3-7; Def. Reply 6-9).  The Court has reviewed again the SAC; reading it generously — in particular, its allegations regarding Lumpkin being "illegally held hostage" (SAC ¶ 29; *see also id.* at ¶¶ 23-34) — it accepts Lumpkin's argument that the SAC pleads an excessive-detention claim.

The principal factual dispute concerns the length of Lumpkin's detention.  Lumpkin alleges that she was detained for ten-and-a-half hours:  from 7:00 a.m. until 5:30 p.m.  (Pl. 56.1 Opp. ¶ 49).  Defendants disagree.  Citing the Online Prisoner Arraignment form, they suggest that Lumpkin was detained for just six-and-a-half hours, from 11:00 a.m. until 5:30 p.m.  (Def. 56.1 ¶ 45; Def. 56.1 Reply ¶ 49).  The Court need not resolve this dispute, because even under Lumpkin's version of events, her excessive-detention claim fails.

An excessive-detention claim may arise where a police officer fails "to investigate specific, readily-verifiable claims of innocence [made by a detained arrestee] in a reasonable time period[.]"  *Russo* v. *City of Bridgeport*, 479 F.3d

196, 209 (2d Cir. 2007). To prevail on an excessive-detention claim, a plaintiff must show "[i] that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, [ii] that the actions of the officers violated that right, and [iii] that the officers' conduct 'shocks the conscience[.]'" *Id.* at 205 (internal citation omitted). Put differently, a plaintiff has "a right to be protected from 'a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence' particularly where the officials 'retain[ ] sole custody of the [exculpatory] evidence[.]'" *Wilson* v. *City of N.Y.*, 480 F. App'x 592, 595 (2d Cir. 2012) (summary order) (quoting *Russo*, 479 F.3d at 208) (brackets in original).

When considering excessive-detention claims under *Russo*, courts weigh the following factors: "[i] the length of time the plaintiff was incarcerated; [ii] the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and [iii] the alleged intentionality of the defendants' behavior." *Harewood* v. *Braithwaite*, 64 F. Supp. 3d 384, 402 (E.D.N.Y. 2014) (citing *Russo*, 479 F.3d at 209-10); *see also Thompson* v. *City of N.Y.*, 603 F. Supp. 2d 650, 656 (S.D.N.Y. 2009) (to succeed on a *Russo* claim, plaintiff must prove that "[i] he was wrongfully incarcerated for an unreasonable length of time; [ii] the defendant-officer, by expending reasonable cost and effort, could have conclusively established the plaintiff's innocence; [iii] the defendant-officer failed to do so; and [iv] the defendant-officer acted with a culpable mental state"). "The touchstone of an [excessive] detention

claim is the existence of egregious conduct by an officer in connection with specific, readily-accessible, exculpatory evidence." *Harewood*, 64 F. Supp. 3d at 402.

Lumpkin has failed to identify any exculpatory evidence that was in Defendants' possession when Lumpkin was detained. Lumpkin points to her written statement that she had "paid a guy to wash [her] clothes. He sent someone to get the clothes. I did not [k]no[w] it was fake." (Def. 56.1 ¶ 39). This statement contained nothing more than a denial of specific intent to commit larceny. Lumpkin did not deny having used Fly Cleaners' services, or even that the victim's credit card was used to pay for those services. Nor did Lumpkin identify anything beyond this *ipse dixit* that suggested that she was not involved in the fraudulent activity.

Any failure to "investigate" Lumpkin's written denial of intent would not suffice to state a *Russo* claim. In *Russo*, the officers improperly stored the only copy of a video surveillance tape that contained conclusive evidence that the plaintiff-detainee was in fact innocent, and then lied about the tape's contents. 479 F.3d at 208. There, the officials' suppression of the exculpatory video rose to the level of egregious behavior that might shock the conscience. *Id.* at 211. Here, by contrast, Defendants engaged in no such behavior. There was no exculpatory evidence that Defendants might have mishandled or suppressed. And even if this Court were to consider Lumpkin's written statement to constitute "exculpatory" evidence, there is no evidence that Defendants suppressed that evidence. The decision to continue to detain Lumpkin despite

her cursory denial does not come close to the kind of egregious, conscience-shocking activity required under *Russo*.

The relative brevity of Lumpkin's detention provides further reason to deny her *Russo* claim. As a sister court in this District found, a detention must be "prolonged" to give rise to a *Russo* claim, and a detention lasting "just a few hours[ ] is not a cognizable Fourth Amendment violation." *Marshall* v. *City of N.Y.*, No. 12 Civ. 7128 (DLC), 2014 WL 1468890, at *3 (S.D.N.Y. Apr. 15, 2014); *accord Lundt* v. *City of N.Y.*, No. 12 Civ. 1737 (DLC), 2013 WL 5298458, at *4 (S.D.N.Y. Sept. 20, 2013) ("detention of three days is too brief to constitute a constitutional deprivation"); *Lenhard* v. *Dinallo*, No. 08 Civ. 165 (NPM) (RFT), 2009 WL 890596, at *6 (N.D.N.Y. Mar. 31, 2009) (where the arrest, detention, and release all occur on a single day, the delay "does not carry constitutional implications"). According to Plaintiffs, Lumpkin was detained for ten-and-a-half hours. On the record before it, this Court cannot find that that detention was prolonged or excessive. For that reason, and because there is nothing to suggest that Defendants overlooked exculpatory evidence, the Court finds that Lumpkin's *Russo* claim fails.

In their opposition brief, Plaintiffs appear to concede as much in that they fail to address *Russo*. Plaintiffs instead focus exclusively on *County of Riverside* v. *McLaughlin*, 500 U.S. 44 (1991), and its progeny. (Pl. Opp. 3-7). Plaintiffs' choice in this regard is curious in light of this Court's Opinion denying Defendants' motion to dismiss. There, the Court "reject[ed] the talismanic significance Defendants attach[ed] to *McLaughlin*." *Lumpkin I*, 230

F. Supp. 3d at 184.  It explained that *McLaughlin*'s holding — that an individual arrested without a warrant must receive a judicial determination of probable cause within 48 hours of arrest — "does not speak to Lumpkin's excessive-detention claim[.]"  *Id.* (internal quotation marks and citation omitted).  The Court made clear that the "more apt precedent is *Russo*[.]"  *Id.* Plaintiffs' failure to address *Russo* and their reliance on *McLaughlin* are therefore all the more striking.

They are also misplaced.  Though the Court finds that *Russo* controls, and that *McLaughlin* is inapt, it will address Plaintiffs' *McLaughlin* argument for sake of completeness.  In *McLaughlin*, the U.S. Supreme Court held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement[.]"  500 U.S. at 56. Yet a judicial determination of probable cause provided within 48 hours may be constitutionally deficient "if the arrested individual can prove that [the] probable cause determination was delayed unreasonably."  *Id.*  Examples of unreasonable delays include those "for the purpose of gathering additional evidence to justify the arrest, … motivated by ill will against the arrested individual, or delay for delay's sake."  *Id.*

Plaintiffs argue that "[D]efendant Brehm forced [Lumpkin] to remain in the precinct solely for the purpose of attempting to reach her daughter, [P]laintiff Lloyd, on the telephone so as to have her daughter come in to be placed under arrest."  (Pl. Opp. 5).  Plaintiffs claim that this behavior evinces ill

will against Lumpkin, or, in the alternative, that it "may very well present a new category [of exceptions to the 48-hour rule]." (*Id.* at 6).

Even if *McLaughlin* were relevant to the instant action, Plaintiffs' arguments would fail. The record presents no evidence that Lumpkin's detention was motivated by ill will or any other suspect motive. That Defendants instructed Lumpkin to call Plaintiff Lloyd, who was a suspected co-conspirator — and that officers said, "call your daughter, and we'll let you go," and "if you get her here we let you leave faster" (Dkt. #57-6 at 11:12-13, 80:10-11) — do not suggest, as Plaintiffs assert, that a probable cause determination as to Lumpkin was "delayed unreasonably." *McLaughlin*, 500 U.S. at 56. Rather, it was reasonable for Defendants to see if Lloyd might return Lumpkin's call or appear at the precinct before Lumpkin was permitted to leave later that same day.

The cases on which Plaintiffs rely do not suggest otherwise. In *Richardson* v. *Providence*, the court denied summary judgment after finding compelling evidence that the arresting officers had made off-color remarks mocking plaintiff as he was forced to stand against a wall for ninety minutes, and that the officers had engaged in delay for delay's sake or were motivated by ill will. No. 09 Civ. 4647 (ARR) (LB), 2012 WL 1155775, at *3-4 (E.D.N.Y. Apr. 6, 2012). In *Davis* v. *City of New York*, the court denied summary judgment after finding that police had failed to make a probable cause determination for four hours, after having "shov[ed] [plaintiff] against a store-front security gate and ... hit[ ] [plaintiff's] hand against the gate and twist[ed]

his arm."  No. 15 Civ. 4684 (FB) (RER), 2017 WL 5436504, at *1, 4 (E.D.N.Y. Sept. 28, 2017).  And in *Pesola* v. *City of N.Y.*, the court denied a motion to dismiss where police officers detained plaintiffs for 38 hours and 47 hours, ordered plaintiffs to submit to an iris scan, and told plaintiffs that they would not be arraigned until they submitted to the iris scan.  No. 15 Civ. 1917 (PKC) (SN), 2016 WL 1267797, at *9 (S.D.N.Y. Mar. 30, 2016).  In each of those cases — unlike here — there was affirmative evidence of ill will or delay for its own sake.  Here, the only allegation of ill will is Lumpkin's claim that she was told that the police would "let [her] leave faster" if she convinced Lloyd to join her at the police station.  (Dkt. #57-6 at 80:10-11).  That is simply not enough to sustain a *McLaughlin* claim.

Ultimately, the Court cannot find any disputes of material fact as to Lumpkin's excessive-detention claim, either under *Russo*, which this Court considers to be the relevant precedent, or under *McLaughlin*.  Lumpkin's excessive-detention claim therefore fails.

### CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED as to Defendants Brehm and Ahmetaj.  Plaintiffs are directed to show cause in writing **within 14 days** why the case should not also be dismissed as to Defendants Roe and Doe.

SO ORDERED.

Dated:     June 8, 2018
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge